## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02878-DDD-MEH

ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC,
                Plaintiff,

v.

 ZOOM VIDEO COMMUNICATIONS, INC.,

        Defendant.

---

## DEFENDANT ZOOM VIDEO COMMUNICATIONS, INC.'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404

---

### CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(a), the undersigned counsel certifies that on October 27, 2020**,** counsel for Defendant Zoom Video Communications, Inc. conferred by telephone with counsel for Plaintiff Rothschild Broadcast Distribution Systems, LLC concerning this motion.  Pursuant to Local Patent Rule 17, the brief and memorandum of points and authorities supporting this motion contains less than 10,000 words.

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................................1

II.   FACTUAL BACKGROUND ....................................................................................1

   A.   Rothschild and the Asserted Patents ..........................................................1

   B.   Zoom ...........................................................................................................2

III.   TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA IS WARRANTED...3

   A.   This Action Could Have Been Filed in the Northern District of California ............4

   B.   The Equities Weigh in Favor of Transfer ...................................................5

      1.   Plaintiff's Choice of Forum ............................................................5

      2.   The Accessibility of Witnesses and Sources of Proof ...................6

      3.   The Cost of Making the Necessary Proof .......................................8

      4.   Judgment Enforceability .................................................................9

      5.   Relative Advantages and Obstacles to a Fair Trial ........................9

      6.   Difficulties that May Arise from Congested Dockets.....................9

      7.   Conflict of Laws ...........................................................................10

      8.   Advantages of Local Court Determining Local Law....................10

      9.   All Other Practical Considerations ...............................................10

IV.   CONCLUSION........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010)....................................................................................9

*Bailey v. Union Pac. R.R. Co.*,
  364 F. Supp. 2d 1227 (D. Colo. 2005)........................................................................5

*Body Sci. LLC v. Boston Sci. Corp.*,
  No. 11 C 03619, 2012 WL 718495 (N.D. Ill. Mar. 6, 2012) ....................................7

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
  928 F.2d 1509 (10th Cir. 1991) .................................................................................4

*Denver & Rio Grande W. R.R. Co. v. Brotherhood of R.R. Trainmen*,
  387 U.S. 556 (1967)....................................................................................................6

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*,
  618 F.3d 1153 (10th Cir. 2010) ..........................................................................5, 6, 9

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009)..................................................................................7

*Hustler Magazine, Inc. v. United States Dist. Court for the Dist. of Wyo.*,
  790 F.2d 69 (10th Cir. 1986) .....................................................................................4

*Potter Voice Techs. v. Apple, Inc.*,
  No. 12-cv-01096-REB-CBS, 2013 WL 1333483 (D. Colo. Mar. 29, 2013) .............5

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007)....................................................................................................5

*Steward Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988)......................................................................................................4

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017)................................................................................................4

*Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*,
  579 F.2d 561 (10th Cir. 1978) ...................................................................................4

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)...............................................................................3

*Wine Masters Cellars, LLLP v. Vinotemp Intern. Corp.*,
    C.A. No. 11-cv-00623-WYD-KLM, 2011 WL 2621537 (D. Colo. July 1,
    2011) ...................................................................................................................10

**Statutes**

28 U.S.C. § 1400(b) ...................................................................................................4, 5

28 U.S.C. § 1404(a) ...................................................................................................3, 6

**Rules**

Fed. R. Civ. P. 45(c) ......................................................................................................8

## I.      INTRODUCTION

The Northern District of California is a much more convenient venue for Plaintiff Rothschild Broadcast Distribution Systems, LLC's ("Rothschild") patent infringement action against Zoom Video Communications, Inc. ("Zoom"), as neither Rothschild nor Zoom are headquartered in Colorado. All of the witnesses most likely to have relevant information— Zoom's engineering, research and development, marketing, financial, and legal teams—are based in either Zoom's San Jose headquarters or in China, as are the documents most likely to be used as evidence.  Meanwhile, Rothschild has not alleged that it has any ties to this District, nor do there appear to be any relevant witnesses for which Colorado would be a more convenient location than the San Francisco Bay Area.  Instead, Rothschild bases its choice of venue solely on the existence of a sales-focused satellite office that Zoom maintains in Denver.

Because Rothschild is not based in Colorado, and the facts giving rise to this suit have no material relation or connection to this District, Rothschild's choice of forum is entitled to no weight—and the interests of justice weigh uniformly in support of transferring this matter to the Northern District of California (the "Northern District").

## II.     FACTUAL BACKGROUND

### A.       Rothschild and the Asserted Patents

Rothschild is a Texas limited liability company with its principal place of business in Miami, Florida.  (Compl. ¶ 1, ECF No. 1.)  Rothschild's only known asset is the single patent asserted in this matter.

On September 22, 2020, Rothschild sued Zoom in this District, asserting infringement of U.S. Patent No. 8,856,221 (the "'221 Patent"), entitled "System and Method for Storing

Broadcast Content in a Cloud-Based Computing Environment." This patent relates generally to a system, method, and device for on-demand storage and delivery of media content.

### B.      Zoom

Zoom is a California-based video communications firm that has been developing innovative conferencing technologies since its founding in 2011.  Zoom's flagship product is its videoconferencing software, which allows businesses, organizations, and individuals to interact in a simple, frictionless way.

Zoom is headquartered in San Jose, California, in the Northern District.  (Declaration of Raghu Rao submitted herewith ("Rao Decl.") ¶ 6.)  Zoom has been headquartered in the Northern District since its inception and is incorporated in Delaware.  (*Id.* ¶¶ 5, 8.)  Zoom's principal executive offices are in San Jose, which is also where its CEO, Eric Yuan, is based. (*Id.* ¶ 7.)  The San Jose office houses the majority of U.S. Zoom personnel who work on product development and support, including virtually all of Zoom's product and marketplace teams, as well as its key engineers.  (*Id.* ¶ 10.)  Zoom has four other offices in the United States and five other offices abroad.[1]  (*Id.* ¶ 11.)  The San Jose office, with 87,000 square feet of leased commercial space and approximately 660 employees, is Zoom's largest office in the United States.  (*Id.* ¶ 12.)  Zoom's Denver office has approximately 517 employees, primarily working on enterprise sales.  (*Id.* ¶ 13.)

Zoom's technical operations are based in its San Jose office.  (*Id.* ¶ 14.)  In its complaint,

---

[1] Zoom has a total of approximately 40 worldwide leases.

Rothschild appears to accuse Zoom's Cloud Recording product.[2]  (Compl. ¶¶ 18-24.)  This product was developed by Zoom's engineering team working primarily out of San Jose and China.  (Rao Decl. ¶ 16.)  This product was not researched, designed, or developed by engineers based in Zoom's Colorado office.  (*Id.* ¶ 17.)  Even now, the vast majority of Zoom's employees with knowledge of and access to the technical documents and source code likely to be relevant in this case work at Zoom's headquarters in San Jose or in China.  (*Id.* ¶ 18.)

Zoom's management teams for its financial, legal, research and development, and sales and marketing operations are likewise based out of its San Jose headquarters.  (*Id.* ¶ 22.)  In fact, many of the relevant financial, marketing, and legal documents are accessible only through its employees in San Jose.  (*Id.* ¶ 19.)  While there are sales, commercial legal, and IT support teams located in Zoom's Denver office, all of these teams report up to members of management in San Jose.  (*Id.* ¶ 21.)

## III.   TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA IS WARRANTED

"Change of venue in patent cases, like other civil cases, is governed by 28 U.S.C. § 1404(a)."  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).  Section 1404(a) provides that an action may be transferred to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The decision whether to transfer an action lies within the sound discretion of the trial judge and should be based on an "individualized, case-by-case consideration of

---

[2] Plaintiff in fact asserts the patent against "the CuriosityStream streaming platform"—a product with which Zoom has no affiliation—but also includes screenshots from Zoom's Cloud Recording documentation. (Compl. ¶¶ 17-24).

convenience and fairness." *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978); *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

    In ruling on a motion to transfer venue, a court must determine both (1) whether the case may have been brought in the proposed transferee district and (2) whether the "competing equities" weigh in favor of transfer. *Hustler Magazine, Inc. v. United States Dist. Court for the Dist. of Wyo.*, 790 F.2d 69, 71 (10th Cir. 1986). The Tenth Circuit has identified nine factors to be considered:

> [1] the plaintiff's choice of forum; [2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4] questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court determine questions of local law; and, [9] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (citation omitted). Applied to the present case, these factors strongly support transfer to the Northern District of California.

### A.    This Action Could Have Been Filed in the Northern District of California

    Rothschild could have brought this patent infringement action against Zoom in the Northern District. Zoom is headquartered within that district and regularly conducts business there. *See* 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."); *TC Heartland LLC v. Kraft*

*Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017) (interpreting § 1400(b)).

**B.     The Equities Weigh in Favor of Transfer**

**1.     Plaintiff's Choice of Forum**

This factor weighs in favor of transfer.  While a plaintiff's choice of forum should ordinarily not be disturbed, little weight is given "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) (citation omitted).  A plaintiff's choice of forum is provided even less deference where, as here, the plaintiff does not reside in the district.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *see also Bailey v. Union Pac. R.R. Co.*, 364 F. Supp. 2d 1227, 1229-30 (D. Colo. 2005).

As detailed above, Rothschild is a limited liability corporation headquartered in Miami, Florida and has not alleged a single tie to this District.  The sole reason provided in the complaint for bringing suit in Colorado is because "Defendant's instrumentalities that are alleged herein to infringe were and continue to be used, imported, offered for sale, and/or sold in the District." (Compl. ¶ 6.)  While Zoom does indeed sell the accused product in Colorado, it also sells these product globally[3] and has ten offices spread throughout the United States, Europe, and Asia. (Rao Decl. ¶¶ 9, 11); *see Potter Voice Techs. v. Apple, Inc.*, No. 12-cv-01096-REB-CBS, 2013 WL 1333483, at *3 (D. Colo. Mar. 29, 2013) (a plaintiff's choice of forum is given "little weight" where "[t]he infringements alleged in the complaint take place in Colorado, but they also take place in every other district in the country.")  Zoom maintains a satellite office in

---

[3] There are a small number of countries in which Zoom's products are unavailable for regulatory or legal reasons.

Denver, however its headquarters are located in San Jose.  (Rao Decl. ¶ 6.)  The accused product was developed by Zoom's San Jose and China-based research and development teams and is currently maintained by its engineering teams—also based in San Jose and China.  (*Id.* ¶ 16.)  As previously discussed, San Jose is also home to Zoom's management, financial, legal, and sales and marketing operations.  (*Id.* ¶ 22.)

Plaintiff is a serial patent litigant and has, since 2015, asserted the '221 patent against 70 other defendants.  While six of these cases were filed in the Northern District, this appears to be the first and only lawsuit it has brought in Colorado.  Plaintiff has also sued entities in the Eastern District of Texas (30 cases), the District of Delaware (21 cases), and six other districts.

### 2.      The Accessibility of Witnesses and Sources of Proof

This factor weighs strongly in favor of transfer.  "The convenience of witnesses is the most important factor in deciding a motion [to transfer venue] under § 1404(a)."  *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (citation omitted); *see also Denver & Rio Grande W. R.R. Co. v. Brotherhood of R.R. Trainmen*, 387 U.S. 556, 560 (1967) ("[V]enue is primarily a matter of convenience of litigants and witnesses.").  "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality of materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary."  *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (alterations omitted) (internal quotation marks omitted) (citation omitted).

The vast majority of witnesses and documents relevant to this case are located in the Northern District.  Moreover, Zoom is aware of no relevant documents stored in Colorado.  Rao

Decl. ¶ 19).  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted); *see also Body Sci. LLC v. Boston Sci. Corp.*, No. 11 C 03619, 2012 WL 718495, at *8 (N.D. Ill. Mar. 6, 2012) ("In patent infringement cases, the location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents, rather than upon those of the plaintiff.") (internal quotation marks omitted) (citation omitted). The documents most likely to be relevant to this case are located in Zoom's various engineering and sales databases—all of which are maintained from its San Jose headquarters.  (Rao Decl. ¶ 20.)  Likewise, the Zoom employees with knowledge of and access to its technical documents and source code are located almost exclusively in either San Jose or China.  (*Id.* ¶ 18.)

At trial, Zoom expects to call (1) its key technical engineers involved in the design and implementation of the accused product, (2) senior marketing staff familiar with the marketing and advertisement of the accused product, and (3) senior financial staff with knowledge of revenues, costs, forecasts, and negotiations related to the accused product.  These teams are all based out of Zoom's Northern California headquarters and are managed by the following individuals, likely to be called as witnesses:

- Brendan Ittelson, Chief Technology Officer, is based in San Jose, California and oversees Zoom's technology strategy and innovation.  (Rao Decl. ¶ 23.)

- Janine Pelosi, Chief Marketing Officer, is based in San Jose, California and oversees the company's branding, communications, and product marketing.  (*Id.* ¶ 24.)

- Kelly Steckelberg, Chief Financial Officer, is based in San Jose, California and oversees Zoom's financial planning and strategy.  (*Id.* ¶ 25.)

While the Northern District is substantially more convenient for Zoom, nothing suggests it would be less convenient for Rothschild.  Zoom is not aware of any Rothschild witnesses based in this District and, given its incorporation in Texas and its Miami headquarters, any such witnesses are unlikely.  If inventor testimony is sought by either party, the sole named inventor of the '221 Patent, Leigh M. Rothschild, appears to be a Florida resident, making California no less convenient than Colorado.  (Declaration of Andrew T. Jones submitted herewith ("Jones Decl.") ¶ 3 & Ex. A.)  Likewise, to the extent conduct before the Patent Office becomes an issue in this case, the attorneys responsible for prosecuting the asserted patent are based in Florida and Illinois.  (*Id.* ¶ 4 & Ex. B.)

While no third-party witnesses have yet been identified, it is substantially more likely, based on the technology involved and the parties' weak or nonexistent ties to Colorado, that these witnesses will reside in the Northern District and that this Court may not be able to secure their attendance at trial.  *See* Fed. R. Civ. P. 45(c) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . (ii) is commanded to attend a trial and would not incur substantial expense.")

### 3.    The Cost of Making the Necessary Proof

This factor weighs strongly in favor of transfer.  It is far less expensive and burdensome for Zoom to litigate in California, where both its headquarters and counsel are located, than for

its employees to regularly travel to and from Colorado.[4] *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (finding that the "significant expenses for airfare, meals, and lodging, as well as losses in productivity from time spent away at work" favored a transfer of venue from the Eastern District of Texas to the Northern District of California).  This is especially so given the likelihood that witnesses would be required to travel to and from China.  While Denver International Airport has only a single non-stop flight to Asia (landing in Tokyo), San Francisco International Airport has non-stop flights to six destinations in China alone.  (Jones Decl. ¶ 5 & Ex. C.)

### 4.      Judgment Enforceability

This factor is neutral.  The enforceability of any judgment obtained in this matter will not be impacted by a change in venue.

### 5.      Relative Advantages and Obstacles to a Fair Trial

This factor is neutral.  There are no readily apparent advantages or obstacles to a fair trial in either venue.

### 6.      Difficulties that May Arise from Congested Dockets

This factor weighs slightly in favor of transfer.  "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."  *Employers Mut. Cas. Co.*, 618 F.3d at 1169.  While the average caseload per judge is lower in this District, the median time to trial in patent cases in the Northern District over the past three years was 26.8 months, whereas the median time to trial for patent cases in

---

[4] The same is likely true of Rothschild, given its location in Miami and its Texas-based counsel.

this District was 37.7 months.  (Jones Decl. ¶ 6 & Ex. D.)

### 7.      Conflict of Laws

This factor is neutral.  Rothschild does not raise any issues in its complaint that implicate state, foreign, or other potentially conflicting laws.

### 8.      Advantages of Local Court Determining Local Law

This factor is neutral.  Both this District and the Northern District are fully and equally capable of correctly applying federal law.

### 9.      All Other Practical Considerations

This factor favors transfer.  While this is the first case in Colorado involving the '221 Patent, Plaintiff has asserted this patent in six separate actions filed in the Northern District. Both judicial economy and comity considerations weigh in favor of allowing a single judge or court to familiarize themselves with the patent and technology at issue in this case.  In sum, "two federal courts should not be adjudicating the same issues."  *Wine Masters Cellars, LLLP v. Vinotemp Intern. Corp.*, C.A. No. 11-cv-00623-WYD-KLM, 2011 WL 2621537, at *5 (D. Colo. July 1, 2011) quoting *New York Marine and Gen. Ins. Co. v. Lafarge N. Am.*, 599 F.3d 102, 113 n. 2 (2d Cir. 2010).

## IV.      CONCLUSION

Zoom asks that the Court transfer this matter to the Northern District.  Rothschild has alleged no connection to this District, nor has it identified any relevant evidence or witnesses located in Colorado.

Dated:  November 17, 2020          By:   */s/ Timothy C. Saulsbury*
                                                    TIMOTHY C. SAULSBURY

                                                    Timothy C. Saulsbury

Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:     415-362-6666
E-mail: tsaulsbury@durietangri.com

Andrew T. Jones
Durie Tangri LLP
953 East 3rd Street
Los Angeles, CA 90013
Telephone:     213-992-4499
E-mail: ajones@durietangri.com

Attorneys for Defendant
Zoom Video Communications, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of November, 2020, I electronically filed a true and correct copy of the foregoing **DEFENDANT ZOOM VIDEO COMMUNICATIONS, INC.'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

jay@kjpllc.com
ajones@durietangri.com

*/s/ Timothy C. Saulsbury*