IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>ZOOM VIDEO COMMUNICATIONS, INC.,<br><br>　　　　　　　　Defendant. | Case No. 1:20-cv-02878-DDD-MEH |

**DEFENDANT ZOOM VIDEO COMMUNICATIONS, INC.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

                                                            **Page**

I.     INTRODUCTION ....................................................................................................... 1

II.    PATENT BACKGROUND ......................................................................................... 1

III.   LEGAL STANDARD ................................................................................................. 3

IV.   ARGUMENT .............................................................................................................. 4

        A.    *Alice* Step One:  The '221 Patent's Claims Are Directed to the Abstract Idea of Requesting to Receive or Store Media Content ......................................................... 4

                1.    The Recited Steps Use Functional Language and Generic Computer Components to Perform a Common Business Practice ............................... 5

                2.    Federal Circuit Decisions Confirm that the Claims Are Directed to an Abstract Idea ................................................................................................ 7

        B.    *Alice* Step Two: The Limitations Do Not Transform the Claims .......................... 11

                1.    Each Step of the Claims Simply Describes the Abstract Method .............. 11

                2.    The Patent Claims Conventional Ways of Using Generic Computers ...... 12

        C.    Claim 7 is representative ......................................................................................... 13

V.    CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affinity Labs. Of Texas, LLC v. Amazon.com Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016) ................................................................................... 8, 11

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ............................................................................................ 4, 7, 9, 11

*American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*,
   967 F.3d 1285 (Fed. Cir. 2020) ............................................................................................ 5

*Association for Molecular Pathology v. Myriad Genetics, Inc.*,
   569 U.S. 576 (2013) ............................................................................................................ 4

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*,
   703 F. App'x 986 (Fed. Cir. 2017) ................................................................................... 12

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) ............................................................................................. 4

*Content Extraction & Transmission LLC v. Wells Fargo Bank, National Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ........................................................................................... 9

*Elec. Comm'n Techs., LLC v. ShoppersChoice*,
   LLC, 958 F.3d 1178 (Fed Cir 2020) .................................................................................... 7

*Electric Power Group, LLC v. Alstrom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ............................................................................... 4, 12, 14

*Encyclopedia Britannica, Inc. v. Dickstein Shapiro*,
   128 F. Supp. 3d 103 (D.D.C. 2015), *aff'd*, 653 F. App'x 764 (D.C. Cir. 2016) .................... 9

*Ericsson Inc. v. TCL Communication Technology Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020) ....................................................................................... 8, 9

*Intellectual Ventures I LLC v. Capital One Bank*,
   792 F.3d 1363 (Fed. Cir. 2015) ......................................................................................... 12

*Intellectual Ventures I LLC v. Symantec Corp.*,
   234 F. Supp. 3d 601 (D. Del. 2017), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018) .................... 9

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) ......................................................................................... 12

*Orcinus Holdings, LLC v. Synchronoss Techs, Inc.*,
    379 F. Supp. 3d 857 (N.D. Cal. 2019) ...................................................................................9

*Prism Tech. LLC v. T-Mobile USA , Inc.*
    696 Fed. App'x 1014 (Fed. Cir. 2017) ..................................................................................8

*Rothschild Broad. Distrib. Sys. LLC v. VUDU, Inc.*,
    No. 6:15-cv-00233-RWS-JDL (E.D. Tex. filed March 19, 2015) ..........................................6

*Rothschild Broadcast Distribution Systems, LLC v. Project Panther US, LLC*,
    C.A. No. 20-00396 (D. Del. Filed March 19, 2020) ...........................................................1, 2

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)..............................................................................................3

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017).................................................................................5, 10, 11

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)..............................................................................................11

*WhitServe LLC v. Donuts Inc.*,
    390 F. Supp. 3d 571 (D. Del. 2019) *aff'd* 809 Fed. App'x 929 ..................................................3

*WhitServe LLC v. Donuts Inc.*,
    809 Fed. App'x 929 (Fed. Cir. 2020)....................................................................................11

**Statutes**

35 U.S.C. § 101............................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 3, 13

**I.     INTRODUCTION**

In 2014, Plaintiff Rothschild Broadcast Distribution Systems, LLC ("Rothschild") started suing for infringement of United States Patent No. 8,856,221 ("the '221 Patent") a wide range of companies that transmit digital media. To date, Rothschild has filed nearly 75 such lawsuits, including this suit against Defendant Zoom Video Communications, Inc. ("Zoom"). Since the '221 Patent issued in 2014, Rothschild has asserted the '221 Patent against at least 72 defendants, in nearly a dozen district courts throughout the United States.

Rothschild faces a foundational problem with its litigation campaign on the '221 patent, however—namely, that the patent is directed to patent ineligible subject matter such that the Complaint fails to state a claim. Indeed, in approximately ten of Rothschild's prior actions, the accused infringer filed a Rule 12(b)(6) motion based on patent ineligibility under 35 U.S.C. § 101. Every single time, Rothschild settled the action rather than litigate the '221 patent's eligibility on the merits. Zoom now moves to dismiss the Complaint on this same basis.

**II.    PATENT BACKGROUND**

The '221 patent is generally directed to "on-demand storage and delivery of media content." '221 patent, 1:26–27. The specification explains that the patent is intended to address two possible concerns related to on-demand streaming services. First, it notes that many users are charged a flat monthly fee for streaming regardless of their usage, while others are charged a flat rate per video regardless of the length. *Id.* at 1:48–2:2. In both cases, some consumers are overpaying compared to others. The second scenario involves consumers that want to stream a particular program that is not currently available and ultimately lose interest before the program becomes available. *Id.* at 2:3–12. The specification explains that this results in the unnecessary expenditure of data resources and drives up the cost of streaming services. *Id.* It concludes that "[t]here is a need in the art for an on-demand media storage and streaming solution that tailors

1

cost to each consumer based on the requested media content and each consumer's needs." *Id.* at 2:13–16.

The specification then states that "[t]he present invention advantageously provides a method and system for on-demand storage and delivery of media content." *Id.* at 2:20–22. It goes on to describe a system that includes "consumer devices" and a network of servers in a "cloud-computing environment" *Id.* at 3:43–55. The consumer device—which may include a processor "for executing computer program instructions stored in memory 26, as is well known in the art"—connects to "network 18 using communication protocols known in the art," *Id.* at 3:47–52, 66–67. A "broadcast server" on the network may store "media content existence" information "indicat[ing] whether the media content exist[s], e.g., media content not found because user input the wrong movie title." *Id.* at 4:23–41. A "remote server" may be used to store media content "for a specific length of time." *Id.* at 4:42–55. Finally, the patent describes a "cost amount" for each user that is based on "the amount of playback time corresponding to the media content" or "the length of time the consumer wants to store the requested content." *Id.* at 8:20–25.

The patent does not describe the use of any unique hardware for implementing the claimed method and instead describes the use of generic, conventional components (e.g., processor, receiver, transmitter, and memory). Nor does it provide any specific configuration for the servers it requires, and describes them solely based on their general functionality. In the final paragraphs, the specification explains that the claimed invention is able to be implemented using any combination of hardware and software. '221 Patent at 10:12–27.

Independent Claim 7—the only claim referenced in the Complaint—is exemplary. The other independent claim, Claim 1, describes the same process in the form of a system claim.

2

Notably, neither claim, nor any of their dependent claims, specifically address the cost-related problems identified in the specification.

In its Complaint, Rothschild has accused "the CuriosityStream[1] streaming platform" of "practice[ing] a method of storing (e.g., cloud storage) media content (e.g. and recorded music) and delivering requested media content to a consumer device." ECF No. 1, ¶ 18. The Complaint then includes generic screenshots from Zoom's website describing its Cloud Recording product and states, without pointing to any specific feature of that product, that it "necessarily includes a receiver configured to receive a request message including data indicating requested media content (e.g., the Product must have infrastructure to receive a request to store recorded media content or to stream recorded media content on a smartphone; additionally, the request message must contain data that identifies the content to be stored or streamed)." *Id.* at ¶ 19

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." The Federal Circuit has explained that patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts . . . require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see also WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 575 (D. Del. 2019) (collecting cases) *aff'd* 809 Fed. App'x 929.

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof,

---

[1] CuriosityStream is not a Zoom product and appears to be a vestige of a previous assertion against a different defendant.

3

may obtain a patent therefor, subject to the conditions and requirements of this title." Courts have long held that this provision "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). The Supreme Court has established a two-step framework wherein a claim falls outside § 101 where "(1) it is 'directed to' a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2) if so, the particular elements of the claim, considered 'both individually and as an ordered combination,' do not add enough to 'transform the nature of the claim into a patent-eligible application.'" *Electric Power Group, LLC v. Alstrom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quoting *Alice Corp.*, 573 U.S. at 217).

## IV.   ARGUMENT

The '221 Patent is invalid under 35 U.S.C. § 101 because it is directed to patent-ineligible subject matter. The patent claims are directed to the abstract idea of requesting to retrieve media content or to store it for a specified period of time. The claims of the '221 are similar to the numerous claims that have been determined patent-ineligible by both trial courts and the Federal Circuit. They describe nothing other than the use of generic and conventional computers used in a generic and conventional manner to perform a well-established abstract process. This is insufficient under 35 U.S.C. § 101 and the cases applying it.

### A.   *Alice* Step One:  The '221 Patent's Claims Are Directed to the Abstract Idea of Requesting to Receive or Store Media Content

Step one of the *Alice* inquiry "look[s] at the 'focus' of the claims, their character as a whole," to determine whether they are directed to an abstract idea. *Elec. Power Grp.*, 830 F.3d at 1353. When identifying "the true focus of a claim . . . the specification must always yield to the claim language." *ChargePoint*, 920 F.3d at 766.

4

The claims of the '221 patent are directed to the abstract idea of enabling subscribers to request available media content or have it stored for a specified period of time.  The recited limitations do not recite anything unconventional that would amount to significantly more than the abstract idea itself.  Further, the specification confirms that the "invention" is directed to purely functional limitations, applying an abstract concept to a generic computer network.

### 1. The Recited Steps Use Functional Language and Generic Computer Components to Perform a Common Business Practice

Claim 7 explains that it is directed to "[a] method for storing media content and delivering requested media content to a consumer device."  '221 patent, 11:43–44.  The summary of the invention likewise states that its intended purpose is to "advantageously provide a method and system for on-demand storage and delivery of media content."  *Id.* at 2:20–22.

The claimed method consists of several discrete steps, namely: (1) receiving messages from consumers requesting content; (2) confirming that the consumer is using a registered consumer device; (3) determining whether the consumer has sent a request for immediate delivery or for storage; (4) determining whether the requested content is available for either immediate delivery or for storage; (5) checking whether there are restrictions on delivery to the consumer device; and (6) delivering the content if available.  These are general, high-level functions ("receiving," "determining," "checking," and "delivering") and the claims do not describe how these functions are achieved.  This type of claiming has consistently been found abstract.  *See e.g., American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*, 967 F.3d 1285 (Fed. Cir. 2020) ("[t]he claim itself . . . must go beyond stating a functional result; it must identify 'how' that functional result is achieved by limiting the claim scope to structures specified at some level of concreteness, in the case of a product claim, or to concrete action, in the case of a method claim."); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d

5

1329, 1337 (Fed. Cir. 2017) (finding a claim directed to an abstract idea when it "requires the functional results of 'converting,' 'routing,' con-trolling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way.").

The specification describes the performance of the claimed process by a generic "processor," but a computer is not required to perform them. This process can be—and has been—easily performed by human beings. As explained in the chart below, one example of this is a librarian overseeing the process of checking out or placing a book on hold.[2]

| Claim 7 | As Performed by a Human |
|---|---|
| A method for storing media content and delivering requested media content to a consumer device, the method comprising: | A librarian: |
| Receiving a request message including media data indicating requested media content and a consumer device identifier corresponding to the consumer device; | Accepts requests from patrons for media (e.g., books, DVDs, etc,) wherein the requests contain information including the title of the book and an identifier for the patron (e.g., a library card or patron number); |
| Determining whether the consumer device identifier corresponds to a registered consumer device; and | Checks the patron's library card to ensure that the patron is registered with the library; |
| If it is determined that the consumer device identifier corresponds to the registered consumer device, then:<br><br>Determining, whether the requested message is one of a storage request message and a content request message; and | If the librarian determines that the patron is registered with the library, the librarian will determine whether the patron is requesting to check out a book or requesting that it be put on hold; |
| If the request message is the storage request message, then determining whether the requested media content is available for | If the patron is requesting that a book be placed on hold, determining whether it is available to be placed on hold; |

---

[2] Other defendants in Rothschild's previous lawsuits have analogized the claims to the steps performed by a clerk in a video store. *See e.g.,* Memorandum in Support of Motion to Dismiss at 14–15, *Rothschild Broad. Distrib. Sys. LLC v. VUDU, Inc.*, No. 6:15-cv-00233-RWS-JDL (E.D. Tex. filed March 19, 2015).

| Claim 7 | As Performed by a Human |
|---|---|
| storage; and | |
| If the request message is the content request message, then initiating delivery of the requested media content to the consumer device; | If the patron wants to check out a book, the librarian initiates the check-out process; |
| Wherein the media data includes time data that indicates a length of time to store the requested media content; | Wherein the book may be checked out for a certain length of time based on its characteristics (e.g., 1 week for DVDs, 3 weeks for circulating books) |
| The first processor is further configured to determine whether the requested media content exists; and | The librarian determines whether the book exists in the library catalog |
| If the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device. | If the librarian determines that the book exists in the catalog, she then determines whether the book is currently checked out and whether there are any restrictions associated with the requested book (e.g., reference books) that would prevent checkout |

Because this process has been routinely performed by humans for hundreds, if not thousands, of years, the claims of the '221 patent are directed to the abstract idea—namely, the idea of storing and delivering media content. The '221 patent merely claims the implementation of this method using a generic computer processor. As in *Alice*, each step of Claim 7 corresponds directly "to longstanding commercial practices [and] do not pass step one of the two-part § 101 test." *Elec. Comm'n Techs., LLC v. ShoppersChoice,* LLC, 958 F.3d 1178, 1182 (Fed Cir. 2020) (citing *Alice*, 573 U.S. at 219–20).

### 2. Federal Circuit Decisions Confirm that the Claims Are Directed to an Abstract Idea

Since the Supreme Court's decision in *Alice*, a substantial body of case law has developed around the application of § 101 in the context of software or computer-implemented

7

methods. A number of these decisions are instructive in this case.

In one such decision, the Federal Circuit considered a claim "directed to a network-based media system with a customized user interface, in which the system delivers streaming content from a network-based resource upon demand to a handheld wireless electronic device having a graphical user interface." *Affinity Labs. Of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1268 (Fed. Cir. 2016). The court found this claim abstract, determining that it failed to provide any mechanism particular to wireless streaming to handheld devices and that "[t]he purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Id.* at 1269. The '221 patent is abstract for the same reason. It does not describe any mechanism or structure specialized for receiving and parsing requests for delivering or storing media content and instead simply claims the use of generic computer components to perform this function.

Claims related to authorizing access to data have routinely been found to be abstract in nature. For example, in *Prism Tech. LLC v. T-Mobile USA , Inc.*, the Federal Circuit determined that a set of claims was directed to the abstract process of "(1) receiving identity data from a device with request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources." 696 Fed. App'x 1014, 1017 (Fed. Cir. 2017). Likewise, in *Ericsson Inc. v. TVL Commc'n Tech. Holdings Ltd.*, the Federal Circuit held that a patent claiming "a system for controlling access to a platform" was ineligible because it was nothing more than a "bare abstract idea." 955 F.3d 1317, 1325–26 (Fed. Cir. 2020).

The method claimed by the '221 patent is strikingly similar to those at issue in *Prism*

8

*Tech.* and *Ericsson*. It is directed to a method of controlling access to media content that entails (1) receiving a "consumer device identifier" with a request message; (2) determining whether this identifier corresponds to a registered consumer device; (3) if so, permitting access to the media content for storage or retrieval. The addition of further abstract "determining" steps does nothing to make this process more concrete. *Alice*, 573 U.S. at 222 ("'Simply appending conventional steps, specified at a high level of generality,' was not '*enough*' to supply an 'inventive concept.'"). The patent specification merely reinforces the idea of selecting access, describing that subscribers to a streaming service are permitted to access media content while non-subscribers are not.

Courts have regularly found that methods relating to data storage or retrieval are abstract. In a decision affirmed by the Federal Circuit, a court invalidated a patent relating to backing up data, noting that "institutions have long backed up data in general," and that the patent merely "rel[ied] on the ordinary storage and transmission capabilities of computers within a network and appl[ied] that ordinary functionality in the particular context of remote mirroring." *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 607 (D. Del. 2017), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018). Similarly, the Federal Circuit stated in *Content Extraction & Transmission LLC v. Wells Fargo Bank, National Ass'n* that "[t]he concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." 776 F.3d 1343, 1348 (Fed. Cir. 2014). This comports with the findings of many district courts that collecting, recognizing, organizing, storing, and retrieving data are abstract ideas. *See e.g., Orcinus Holdings, LLC v. Synchronoss Techs, Inc.*, 379 F. Supp. 3d 857, 862 (N.D. Cal. 2019) (invalidating a patent directed to "uploading and downloading data from a [customer device] to a server by way of a mobile network"); *Encyclopedia Britannica, Inc. v. Dickstein Shapiro*, 128 F.

9

Supp. 3d 103, 112 (D.D.C. 2015), *aff'd*, 653 F. App'x 764 (D.C. Cir. 2016) (invalidating patent directed to storage and retrieval of information and noting that "[h]umans have been collecting and organizing information and storing it in printed form for thousands of years.").

The Federal Circuit has also considered claims with generic, functional language similar to that at issue in this case.  For instance, in *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, it found that claims directed to a control mechanism for choosing which users receive real-time information were abstract.  874 F.3d 1329 (Fed. Cir. 2017).  It noted that that the patent used broad, functional language such as "converting," "routing," "controlling," "monitoring," and "accumulating records," but did not "sufficiently describe how to achieve these results in a non-abstract way."  *Id.* at 1337.  The claims at issue here are likewise directed to a series of functional steps, yet fail to provide any concrete explanation for how those functions are to be carried out.

Ultimately, the "focus" of the '221 patent's claims is a system for selectively providing access to media content or permitting consumers to store media content for a specified period of time.  The claims amount to nothing more than a description of this concept and the instruction to perform them on generic computers using conventional techniques.  As a result, the claims are directed to a patent-ineligible abstract idea.

### B.      *Alice* Step Two: The Limitations Do Not Transform the Claims

Once a court has determined that a claim is abstract, it may only be saved if it embodies an "inventive concept" that is "significantly more" than the abstract idea alone. *Alice*, 573 U.S. at 217–18. Any such concept must be "evident in the claims." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017). Here, the claims of the '221 patent provide no inventive concept and amount to nothing more than an abstract idea performed using generic computing components in a conventional manner. The specification acknowledges as much, explaining that the system can be implemented in hardware, software, or a combination of the two using any network of servers.

#### 1.      Each Step of the Claims Simply Describes the Abstract Method

Examining the steps of the method claimed in the '221 patent reveals that they do not "do significantly more than simply describe [the] abstract method." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). Instead, the steps merely describe "receiving" a request, "determining" whether the device is registered, "determining" whether the media content is available, and "determining" whether there are any restrictions on access to the media content. However, an abstract idea cannot itself provide the inventive concept and there is nothing novel or unique about the claimed process. The concept of requesting and authorizing access to data storage is not unique. *See Affinity Labs*, 838 F.3d at 1271–72. Nor is the step of running checks against a database to confirm availability. *See WhitServe LLC v. Donuts Inc.*, 809 Fed. App'x 929 (Fed. Cir. 2020) (finding "querying a database" to be the use of "generic components . . . to perform their routine and conventional functions.").

The claims also do not provide a solution to the problems identified in the specification. The specification explains that the invention is intended to solve the inefficiencies of existing pricing models for on-demand streaming services and to provide a way of tailoring a consumer's

11

charges to that consumer's actual use of those services. Yet the claims of the '221 patent do no such thing and instead simply concern the ability to control access to a server and store information on that server for a specified period of time. Nor is this solution provided by the dependent claims, which are not directed to tailoring pricing to usage. Claims 12 and 13, the only claims to even mention costs, do so in the context of simply "transmitting" that cost to a user—a "pay-per-view" concept that any boxing fan will understand is far from novel. The mere fact that this process is being applied in the streaming context is insufficient to transform it into patentable subject matter. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (finding claims directed to "the ability to automate or otherwise make more efficient traditional price-optimization methods" to be abstract); *Capital One*, 792 F.3d at 1367 ("claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" is insufficient to supply an inventive concept).

Put simply, the claims of the '221 patent merely "stat[e] [the relevant] functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology." *Elec. Power Grp., LLC v. Alstrom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016). Because they define these steps functionally and do not limit them to inventive means of accomplishing this function, the claims fail under § 101.

### 2. The Patent Claims Conventional Ways of Using Generic Computers

The use of "generic computer components employed in a customary manner" is insufficient to transform an abstract idea into a patent-eligible invention. *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, 703 F. App'x 986, 990 (Fed. Cir. 2017); *Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("Instructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks

12

does not make an abstract idea patent-eligible.").

Here, the '221 patent specification makes no attempt to disguise the fact that the claimed consumer device and servers are comprised of entirely conventional, generic components and provides no specific configuration aside from the claimed functionality. It states that "[p]rocessor 24 may include a central processing unit (CPU) for executing computer program instructions stored in memory 26, **as is well known in the art**." '221 patent, at 3:65–67 (emphasis added). It further notes that the consumer device "may communicate with network 18 using communication protocols **known in the art**" and that "volatile memory may include random access memory and others **known in the art**." *Id.* at 3:61–62, 4:3–5 (emphasis added). Perhaps most tellingly, the patent expressly states that the required system is defined, not by its structure, but by its function: "Any kind of computing system, or other apparatus adapted for carrying out the methods described herein, is suited to perform the functions described herein." *Id.* at 10:12–21.

Not only does the patent describe the use of generic hardware, it explains that the patented process is not even bound to hardware, but can be "embedded in a computer program product . . . [comprising] any expression, in any language, code or notation, of a set of instructions intended to cause a system having an information processing capability to perform a particular function. . ." *Id.* at 10:21–31.

Nothing in the claims or specification of the '221 transform the abstract idea to which the patent claims are directed into patent-eligible subject matter. For this reason, the '221 patent claims are invalid and the Court should dismiss Rothschild's Complaint for failure to state a claim pursuant to Rule 12(b)(6).

### C.     Claim 7 is representative

It is well-established that a court may rely on a representative claim when assessing

13

patent-eligibility rather than reviewing each asserted claim separately. *See e.g., Elec. Power Grp.*, 830 F.3d at 1352. Claim 7 is not only the sole claim identified in the Complaint, it is also representative of the other claims because they do not add "significantly more" than the abstract concept in claim 7.

The only other independent claim in the '221 patent is claim 1, which is simply the method of claim 7 implemented as a system. Because it adds nothing to the abstract idea embodied by claim 7, it too should be invalidated for lack of patentable subject matter. The claims that depend from claims 1 and 7 are likewise directed to abstract ideas and are insufficient to render the claims concrete or inventive. Claims 2 and 8 are directed to a "storage confirmation message" indicating "whether the requested media content is available for storage," which simply adds an additional abstract step to claim 7's requirement that the processor "determine" whether the media is available to be stored. Claims 3, 4, and 9 are similar and recite the steps of "stor[ing] user data corresponding to an end user media consumer," and "sending a registration message prompting registration of the consumer device," which again merely creates an additional limitation for claim 7's "determin[ation] whether the consumer device identifier corresponds to a registered consumer device." Claims 5, 6, and 11 concern the addition of abstract steps for verifying a consumer device identifier and transmitting content upon verification. Finally, claims 12–13 relate to the abstract concept of transmitting costs to a user. Each of these claims is no more concrete than claim 7 and relates either to the same concepts or adds only generic concepts that are well understood to be unpatentable abstract ideas.

## V.     CONCLUSION

For the reasons stated above, Zoom respectfully requests that the Court dismiss with prejudice Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

14

Dated: December 1, 2020                     DURIE TANGRI LLP

By:     */s/ Timothy C. Saulsbury*
TIMOTHY C. SAULSBURY (CA SBN 281434)
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:    415-362-6666
Facsimile:    415-236-6300
tsaulsbury@durietangri.com

ANDREW T. JONES (CA SBN 313619)
953 East 3rd Street
Los Angeles, CA 90013
Telephone:    213-992-4499
Facsimile:    415-236-6300
ajones@durietangri.com

Attorneys for Defendant
ZOOM VIDEO COMMUNICATIONS, INC.

15

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2020 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

                                                      */s/ Timothy C. Saulsbury*
                                                     TIMOTHY C. SAULSBURY